Fred HOLLINGSWORTH, III, Plaintiff,

v.

IWERKS ENTERTAINMENT, INC., Stanley B. Kinsey, Donald W. Iwerks, Eric G. Rodli, Deborah B. Miao, Douglas W. Broyles, Scott G. McNealy, and Dag Tellefsen, Defendants.

No. 96–919–CIV–T–17–C.

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 6, 1996.

474

Walter Andrew Clayton, Snyder, Groner & Schieb, Venice, FL, for Plaintiff.

Mark A. Brown, Nancy J. Faggianelli, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, FL, Kevin P. Muck, Sara B. Brody, and Amy A. Meldrum, Brobeck, Phleger & Harrison, San Francisco, CA, for Defendants.

## ORDER ON MOTION TO DISMISS

KOVACHEVICH, Chief Judge.

This cause comes before the Court on the following Motion, and responses:

1. Defendants' Motion, with Memorandum in support, to Dismiss Plaintiff's Complaint and attached individual Defendants' declarations in support (Dkt. 9);

2. Plaintiff's Memorandum in response to Defendants' Motion to Dismiss (Dkt. 12);

3. Plaintiff's declaration (Dkt. 13) and Defendants' objections to the declaration, filed June 19, 1996 (Dkt. 14).

## FACTUAL BACKGROUND

Iwerks and Omni are two companies in the simulation film industry. A merger was agreed to and negotiated on or about February 21, 1994. Information was disclosed in these negotiations that is the cause of this action.

During 1993, Omni was involved in a merger that fell through. After that merger attempt, Omni and Iwerks began communication concerning a possible merger. Between February 19–21, 1994, negotiations occurred that became the critical point of the merger. Financial information was exchanged, and misrepresentations and omissions were allegedly made on behalf of Omni. Those alleged misrepresentations and omissions are the basis of this action.

## I. Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b)

Defendants claim that Plaintiff has failed to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiff has failed to plead with particularity as to required by Federal Rule 9(b). Defendants also contend that this Court and the State of Florida do not have personal jurisdiction over Defendants.

## STANDARD OF REVIEW

On a motion to dismiss, a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that a plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff. *Sofarelli v. Pinellas County*, 931 F.2d 718, 721 (11th Cir.1991). Although the court must take the allegations in a complaint as true when reviewing motions to dismiss, it is not permitted to read into the complaint facts that are not there. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209

(1986); *Beck v. Interstate Brands Corp.*, 953 F.2d 1275, 1276 (11th Cir.1992).

Defendants assert that Plaintiff has failed to plead with particularity both claims asserted in Plaintiff's Complaint. Defendants claim that Plaintiff does not state specific instances as to the securities claim. Defendant also argues that Plaintiff fails to allege specific allegations as to individual defendants. Defendant asserts the Complaint does not state how the multiple Defendants were involved, and what their specific roles were. Finally, Defendants argue that, as to the RICO Claim, Plaintiff failed to plead with particularity as to the fraud, and that Plaintiff failed to allege that each Defendant intended to violate the RICO statute.

In response, Plaintiff argues that, in a motion to dismiss, the court is required to view the complaint in the light most favorable to the plaintiff and accept all allegations as true. *Anthony Distributors, Inc. v. Miller Brewing Co.*, 882 F.Supp. 1024, 1029 (M.D.Fla.1995). As to the first part of the Complaint, which deals with securities fraud, Plaintiff relies in part on *In re Checkers Securities Litigation*, 858 F.Supp. 1168, 1176 (1994). In that case, the court stated "allegations of date, time or place satisfy the Rule 9(b) requirement that the circumstances of the alleged fraud must be plead with particularity."

Plaintiff also relies on *In re Sahlen & Associates, Inc. Securities Litigation*, 773 F.Supp. 342, 352 (S.D.Fla.1991). In that case the court concluded that, "in securities fraud cases," for instance, the courts have determined that strict application of Rule 9(b) could result in substantial unfairness to private litigants who could not possible have detailed knowledge of all the circumstances surrounding the alleged fraud. Plaintiff cites particular instances in the Complaint where he alleges dates, times and places that the misrepresentations occurred (Dkt. 12).

As to Defendants' allegation that Plaintiff fails to allege with particularity as to each individual Defendant, Plaintiff contends that the position of each Defendant is contained in the complaint. Plaintiff agrees with Defendants that "where multiple defendants are involved, a complaint must ordinarily distin-

guish among them and specify their respective roles." (Dkt. 12) But, as Plaintiff further cites, *In re Sahlen & Associates, Inc. Securities Litigation*, 773 F.Supp. at 362, the court stated that, "as long as the complaint describes with sufficient information to respond, a court may presume that these acts have been committed collectively by the officers and directors." Plaintiff further notes that the court in *Sahlen* stated, "[T]his relaxed standard for Rule 9(b) purposes has arisen because of the recognition that it may be exceedingly difficult to attribute particular fraudulent conduct to each individual defendant." *Id.*

Plaintiff further contends that, as to the RICO charge of the complaint, Plaintiff, by pleading with particularity as to the misrepresentations that lent themselves to the securities charge, has sufficiently pled the RICO charge, as the misrepresentations arise out of the same acts. In the Complaint, Plaintiff also alleges that Defendants acted in concert with one another to violate the laws, and that they conspired or endeavored to violate the provisions of Ch 772.103, *Florida Statutes*. Plaintiff argues that, contrary to Defendants' allegation, Plaintiff has adequately pled that each Defendant agreed to violate RICO.

The Court finds that Plaintiff has met the burden of 9(b) as to both the securities claim and the RICO claim. Federal Rule 9(b) provides that in claims involving fraud, Plaintiff is required to plead with particularity as to those complaints. The Court finds that in the case at hand, Plaintiff has met the burden by pleading time, place and manner. Also, while this Court recognizes Defendants' argument that Plaintiff has not gone to great depth in his pleadings, the Court relies on *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), in that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that a plaintiff can prove no set of facts that would entitle him to relief.

## II. Personal Jurisdiction

A defense of lack of personal jurisdiction may, at the option of Defendants, be made by motion. See Rule 12(b), Fed.R.Civ.P. Where the court does not conduct a discretionary hearing on a motion to dismiss for lack of personal jurisdiction, Plaintiff must establish a *prima facie* case of personal jurisdiction over Defendants by presenting "sufficient evidence to defeat a motion for directed verdict," *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir.1990). The court must accept the facts alleged in Plaintiff's Complaint as true, to the extent that they are not contradicted by Defendants' affidavits. *Id.* at 855. Where there is conflicting evidence, the court must construe all reasonable inferences in favor of the plaintiff. *Id.*

Once Plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to Defendants to challenge Plaintiff's allegations by affidavits or other pleading. *Prentice v. Prentice Colour, Inc.*, 779 F.Supp. 578, 586 (M.D.Fla. 1991). If Defendants sufficiently challenge Plaintiff's assertions, then Plaintiff must affirmatively support his jurisdictional allegations, and may not merely rely upon the factual allegations set forth in the complaint. *Id.* at 586.

In order to determine whether the Court may exercise personal jurisdiction over nonresident Defendants, the Court must determine: 1) whether the state long-arm statute permits assertion of jurisdiction; and 2) whether sufficient "minimum contacts" exist to satisfy the due process requirements of the Fourteenth Amendment so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice" under *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

## DISCUSSION

Defendants allege that personal jurisdiction is lacking because no party has the requisite minimum contacts with the State of Florida. Also, Defendants controvert Plaintiff's application of Florida's long-arm statute, claiming that they are not subject to the provisions of Ch. 48.193, *Florida Statutes*.

### A. Florida Long–Arm Statute

In this case, Plaintiff asserts that this Court has personal jurisdiction pursuant to

Section 48.193, Florida's long-arm statute. Thus, the Court must look first to Section 48.193.

Florida Statute Section 48.193 provides, in relevant part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state from any cause of action arising from the doing of any of the following acts:

(b) Committing a tortious act within this state;

(f) Causing injury to persons, or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1. The defendant was engaged in solicitation or service activities within this state; or

2. Products, materials, or things processed, serviced or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade or use.

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

Fla.Stat. Section 48.193 (1995).

Defendants argue that Plaintiff has not met the requirement of Florida's long-arm statute, as Plaintiff fails to show that an intentional tort was committed in the State of Florida. Defendants also argue that the individual Defendants do not have the requisite minimum contacts necessary to provide a basis for personal jurisdiction (Dkt. 9).

Plaintiff cites *Allerton v. State Dept. of Ins.*, 635 So.2d 36, 39 (Fla. 1st DCA 1994), citing, *Doe v. Thompson*, 620 So.2d 1004, 1006 n. 1 (Fla.1993) in support of the long-arm statute as providing that the court in those cases found that "a corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction." Finding that the party had intentionally targeted a Florida party, the court went

on to find that, "It is well-established that the commission of a tort for purposes of establishing long-arm jurisdiction does not require physical entry into the state, but merely requires that the place of injury be within Florida." *Allerton*, 635 So.2d at 40, citing, *International Harvester Co. v. Mann*, 460 So.2d 580, 581 (Fla. 1st DCA 1984).

Plaintiff alleges in the Complaint that the actions of the Defendants caused "substantial damages" to Plaintiff in the State of Florida. The Complaint also states that Defendants focused on a Florida-based company. Omni is a company in which there are about sixty employees who could be affected, as well as the Florida community (Dkt. 12). Plaintiff argues that each individual officer and director was involved in the merger process at one point, and expected to receive some benefit out of the transaction.

As stated above, the Court must accept the facts alleged in Plaintiff's Complaint as true, to the extent that the facts are not contradicted by Defendants' affidavits. *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir.1990). Where there is conflicting evidence, the court must construe all reasonable inferences in favor of the plaintiff. *Id.* In the present case, the Court concludes that Plaintiff's Complaint alleges the intentional tortious acts adequately. The Court relies on *Oriental Imports & Exports, Inc. v. Maduro & Curiel's Bank, N.V.*, 701 F.2d 889, 890–91 (11th Cir.1983) in stating that Florida's long-arm statute must be strictly construed, and the burden of proving facts which justify use of the statute is on Plaintiff.

### 1. Ch. 48.193(1)(f)

The Court notes that in *Aetna Life & Casualty Company v. Therm–O–Disc, Inc.*, 511 So.2d 992, 993–94 (Fla.1987), the Florida Supreme Court held that Ch. 48.193(1)(f), *Florida Statutes*, does not apply when the alleged injury is financial and there are no allegations of personal injury or physical property damage. The subject of this case is financial damage alone.

2. Ch. 48.193(1)(g)

As to Ch. 48.193(1)(g), *Florida Statutes,* the Court notes that Plaintiff has not alleged a breach of contract. This section of the long-arm statute cannot apply to this case.

3. Ch. 48.193(1)(b)

█ In making its determination as to Ch. 48.193(1)(b), the Court first looks to the facts alleged in the Complaint. Count I includes allegations that in order to induce Plaintiff and others to consent to a merger between Iwerks and Omni, Defendants made fraudulent misrepresentations or failed to disclose material facts to Plaintiff as to the financial condition and profitability of Iwerks prior to its merger with Omni in May, 1994, resulting in damage to Plaintiff in the State of Florida. The specific initial misrepresentation (Complaint, paragraphs 28, 29) was made in a telephone call from Defendant Kinsey to Plaintiff. The alleged misrepresentations and omissions continued during pre-merger negotiations which took place between April 18, 1994 and April 21, 1994. Further, during discussions which continued until the closing of the merger on May 9, 1994, misrepresentations and omissions as to the following were made:

1) dramatically increasing research and development costs;

2) certain projects were over budget;

3) lack of demand and higher costs than expected for Cinetropolis centers;

4) portable simulation theatres had higher operating expenses than expected;

5) Iwerks financial and accounting departments were deficient and Iwerks' growth, with lack of adequate financial controls, would negatively impact Iwerks' profitability.

Plaintiff contends that in the absence of Defendants' disclosure of the above material facts, and based upon Defendants' misrepresentations as to Iwerks' projected profitability, Plaintiff voted his Omni stock in favor of the amended merger agreement (Complaint, paragraph 39). On May 9, 1994, the merger closed.

In examining Florida law on this issue, the Court notes *McLean Financial Corporation v. Winslow Loudermilk Corporation,* 509 So.2d 1373 (1987), which holds that alleged misrepresentations during loan commitment negotiations via telephone between plaintiffs in Florida and a Virginia savings and loan were insufficient to establish personal jurisdiction. This case is factually similar to the *McLean* case.

Some Florida courts have held that commission of a tortious act in Florida does not require physical entry into the state; the place of injury need only be in Florida. For example, *see International Harvester v. Mann,* 460 So.2d 580 (Fla. 1st DCA 1984); *Carida v. Holy Cross Hospital,* 424 So.2d 849 (Fla. 4th DCA 1982). However, other courts have held that the occurrence of injury in Florida is insufficient to establish jurisdiction in Florida. *Phillips v. Orange Co.,* 522 So.2d 64 (Fla. 2d DCA 1998).

The Court notes that the Florida Supreme Court, in *Doe v. Thompson,* 620 So.2d 1004 (1993), ruled that long-arm jurisdiction did *not exist* over a nonresident corporate officer whose alleged negligent actions were not alleged to have been taken outside his duties as the company's president. *But,* in note 1, 620 So.2d 1004, 1006 (1993), the Florida Supreme Court did state that a corporate officer committing fraud or other *intentional misconduct* can be subject to personal jurisdiction. *See Duke v. Young,* 496 So.2d 37 (Ala.1986); *Armstrong v. Pomerance,* 423 A.2d 174 (Del.Supr.1980); *Martin v. Ju–Li Corp.,* 332 N.W.2d 871 (Iowa 1983); *Anderson v. Heartland Oil & Gas, Inc.,* 249 Kan. 458, 819 P.2d 1192 (1991), *cert. denied,* 504 U.S. 912, 112 S.Ct. 1946, 118 L.Ed.2d 550 (1992); *Vikse v. Flaby,* 316 N.W.2d 276 (Minn.1982); *CPC Intern. Inc. v. McKesson Corp.,* 70 N.Y.2d 268, 519 N.Y.S.2d 804, 514 N.E.2d 116 (1987); *Hammond v. Butler, Means, Evins & Brown,* 300 S.C. 458, 388 S.E.2d 796, *cert. denied,* 498 U.S. 952, 111 S.Ct. 373, 112 L.Ed.2d 335 (1990).

This Court further notes that federal cases have held that jurisdiction under Ch. 48.193(1)(b) is not limited to a situation where an act in Florida caused an injury in Florida but also.... reached the situation where a foreign tortious act caused injury in Florida. *Bangor Punta Operations, Inc. v.*

*Universal Marine Co.,* 543 F.2d 1107, 1109 (5th Cir.1976) (citing *Rebozo v. Washington Post Co.,* 515 F.2d 1208, 1212–13 (5th Cir. 1975)). *Sun Bank, N.A. v. E.F. Hutton & Co. Inc.,* 926 F.2d 1030 (11th Cir.1991).

Although Plaintiff has not demonstrated that a substantial aspect of the alleged tort was committed by the non-resident Defendants in Florida, *L.O.T.I. Group Productions v. Lund,* 907 F.Supp. 1528, 1532 (S.D.Fla. 1995), the Court concludes that Defendants' actions meet the statutory requirement of Ch. 48.193(1)(b).

**B. Minimum Contacts**

The Court must further determine whether there are sufficient minimum contacts between Defendants and Florida to allow this forum constitutionally to assert jurisdiction over the individual Defendants. The Court must also ensure that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

The Court may exercise specific jurisdiction over a nonresident defendant if the defendant has purposefully directed his activities to the forum state and the alleged injury to the forum resident arises out of those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985). The nonresident's activities and connections with the forum must be such that the defendant would "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

Each individual Defendant has submitted a declaration contending that the minimum contacts requirement is not met. Plaintiff has submitted a declaration stating that each Defendant had actual knowledge of the activities and that each Defendant hoped to "benefit personally from arranging a merger between Iwerks and Omni, and they know that a merger would have a substantial effect not only on me, but on Omni's employees in Florida as well." (Dkt. 13).

Defendants object to Plaintiff's declaration, stating that "it lacks foundation, is not based on personal knowledge, and is based on inadmissible hearsay." (Dkt. 14). Further, Defendants argue that the declaration is argumentative and without specific facts and allegations.

What the Court must determine as to each Defendant is whether the acts of each Defendant are constitutionally sufficient and whether the acts constitute "purposeful availment." Individual defendants include outside directors (Broyles, McNealy, Tellefsen), and officers (Miao, Kinsey, Rodli and Iwerks).

At the outset, the Court notes that the exchange of information over the telephone is not sufficient. For example, *see Sun Bank v. E.F. Hutton & Company,* 926 F.2d 1030 (11th Cir.1991). The Court further notes that this transaction involved merger negotiations that extended over a period of time between a California company and a Florida company. Key negotiations took place in California between February 19 and February 21, 1994, after which a merger agreement was signed and presented to the respective Boards of Directors for approval.

**1. Outside Directors (Broyles, McNealy, Tellefsen)**

 The only participation in the merger by the outside directors was their review of the merger proposal, consideration of its merits, discussions with the Board of Directors and with Iwerks' management, and approval of the transaction. The Board meeting to approve the transaction took place on February 21, 1994 in California.

Plaintiff asserts that Broyles and McNealy were members of the directors' Audit Committee, and Tellefesen was a member of the Board's Compensation Committee. Plaintiff asserts that these directors had actual knowledge of Iwerks' true financial condition.

The Court finds that the contacts of these individual Defendants are insufficient to meet the constitutional standard.

### 2. Officers (Miao, Kinsey, Rodli and Iwerks)

■■■ Defendants Iwerks and Rodli made one trip to Florida to discuss various potential business arrangements between Iwerks and Omni prior to February, 1994, when the merger agreement was signed.

Only Donald Iwerks and Eric Rodli actually visited Florida in connection with the merger negotiations. Defendant Iwerks characterizes his trip as a "courtesy call" and a "goodwill trip" to meet Omni employees and address their questions about Iwerks. That trip took place in March, 1994. Defendant Rodli made one trip to Florida in April, 1994, in response to Plaintiff's desire to renegotiate the terms of the merger after the price of Iwerks' stock declined following a public announcement regarding Iwerks' third quarter earnings.

Defendants Kinsey and Miao participated in the negotiations in California in February, 1994.

Plaintiff asserts that all four officers expected to benefit personally from the merger. As to Defendants Iwerks and Rodli, Plaintiff asserts that they visited Omni's offices in Sarasota, Florida in January, 1994 to discuss the possible merger. Plaintiff further states that:

> "As a result of continued representations by these Iwerks representatives as to Iwerks' bright financial picture, and a series of telephone calls between me, Mr. Smith and various members of Iwerks' senior management, Mr. Smith, Omni's general counsel, James A. Ruf, Jr., and I accepted the defendants' invitation to attend a negotiating session at the offices of Iwerks' counsel in Los Angeles, California over the President's Day weekend in 1994. At that meeting I was presented with more detailed information to back up defendants' prior pronouncements of Iwerks' purportedly positive financial condition." (Dkt. 13, p. 2).

The Court finds that the exercise of personal jurisdiction over Defendants Iwerks and Rodli could be appropriate if the alleged misrepresentations were made in Florida. The Court finds that an evidentiary hearing is necessary as to Defendants Iwerks and Rodli. As to Defendants Kinsey and Miao, the Court finds that their connection with Florida does not meet the constitutional standard. Accordingly, it is

**ORDERED** that the Motion to Dismiss for lack of personal jurisdiction is **granted** as to Defendants Broyles, McNealy, Tellefsen, Kinsey and Miao, and is **deferred** as to Defendants Iwerks and Rodli. This matter is referred to the Magistrate Judge for an evidentiary hearing as soon as practicable. The Motion to Dismiss for failure to state a claim is **denied.**